**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:21-cv-00584

HANCOCK WHITNEY BANK, a Mississippi state chartered bank

Plaintiff,

v.

SARA ASHLEY KNIGHT, an individual; CMK HOLDINGS, PLLC, a Colorado professional limited liability company; and CHAD KNIGHT, an individual.

Defendants.

## COMPLAINT

Plaintiff Hancock Whitney Bank, a Mississippi state chartered bank (hereinafter "**Plaintiff**" or "**Hancock**") hereby submits this Complaint.

**1.   PARTIES**

1. Plaintiff is a Mississippi state chartered bank with its principal place of business located in Gulfport, Mississippi.

2. Defendant Sara Ashley Knight is an individual and citizen of the State of Colorado whose domicile is in Boulder County, Colorado.

3. Defendant Chad Knight is an individual and citizen of the State of Colorado whose domicile is in Boulder County, Colorado.

1

4. Defendant CMK Holdings, PLLC ("**Defendant CMK**") is a Colorado professional limited liability company with its principal place of business in Colorado and whose sole member is Defendant Chad Knight. Defendant CMK is thus a citizen of the State of Colorado.

**2. JURISDICTION**

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists between Plaintiff and all Defendants. Plaintiff seeks damages in excess of $75,000.00 against the Defendants.

6. Venue is proper in this District because Defendants are all residents of the State of Colorado.

**3. GENERAL ALLEGATIONS**

7. Plaintiff is a creditor of Defendant Chad Knight.

8. Defendant Chad Knight personally guaranteed a loan that Plaintiff made to Reunion of Biloxi Development, LLC in the principal amount of $1,988,000.00 (the "**Loan**"). The Loan and personal guaranty were made and executed on or about February 20, 2009.

9. As a result of Defendant Chad Knight personally guaranteeing the Loan, and by failing to satisfy the obligations of the borrowers under the promissory note related to the Loan, Plaintiff is a creditor of Defendant Chad Knight and maintains a "claim" against him under the Uniform Fraudulent Transfer Act.

10. The Loan went into default and Defendant Chad Knight failed to pay all amounts due and owing under the Loan.

11. Plaintiff initiated collection proceedings in the State of Mississippi in a case captioned *Hancock Bank v. Chad Knight, et al.*, Harrison County Chancery Court, Case No. 24CH2:10-cv-00947 (the "**Mississippi Action**").

12. On September 11, 2018, judgment was entered in favor of Plaintiff and against Defendant Chad Knight in the Mississippi action in the amount of $2,021,899.14 with interest accruing thereunder at the rate of 8% per annum for breaching his guaranty of the Loan. (the "**Judgment**").

13. On or about May 6, 2020, Plaintiff subsequently caused the Judgment to be domesticated in the State of Colorado pursuant to Colorado's adoption of the Uniform Enforcement of Foreign Judgments Act (the "**UEFJA**").

14. Plaintiff domesticated the Judgment under the UEFJA by filing the appropriate notices, records and affidavits in the Boulder County District Court, State of Colorado, which created Boulder County District Court Case No. 2020CV30392 (the "**Boulder Case**").

15. After Plaintiff domesticated the Judgment and gave appropriate notice to Chad Knight of the same, Defendant Chad Knight emailed Plaintiff's Colorado counsel on May 12, 2020 acknowledging receipt of said domestication in Colorado.

16. Defendant Chad Knight is an experienced litigator and is a named partner at Knight Nicastro MacKay, LLC, a law firm practicing in the State of Colorado and other states (the "**Law Firm**").

17. In phone calls and follow up correspondence with Plaintiff's counsel, Chad Knight disputed liability under the Judgment and claimed that he never knew that a Judgment had been entered against him in Mississippi.

18. After domesticating the Judgment in Colorado, Plaintiff obtained transcripts of judgment from the Boulder County District Court and recorded those transcripts as judgment liens against real property owned by Chad Knight in Boulder and Summit counties in Colorado.

19. After recording those judgment liens against Chad Knights real properties, Plaintiff did nothing further to enforce its Judgment for several months.

20. But during that time, Chad Knight was busy "protecting" his assets from Plaintiff's collection efforts.

21. In particular, as of April 2020, Chad Knight was the owner of a brokerage account in his sole name maintained at E-Trade (the "**E-Trade Account**").

22. Chad Knight's E-Trade statements reflect that as of April 30, 2020 (before he learned that the Judgment was domesticated in Colorado) he had $801,223.68 in cash in his E-Trade Account.

23. Yet, in May 2020, he withdrew $652,815.87 in cash from his E-Trade Account through a series of checks written to concealed payees.

24. Upon information and belief, Chad Knight's massive withdrawals from his E-Trade Account were made after he learned about the domestication of the Judgment in Colorado.

25. By virtue of discovery propounded by Plaintiff to Chad Knight under C.R.C.P. 69, Chad Knight had a duty to disclose the recipient of this $652,815.87 in funds that he withdrew from his E-Trade account after he claims to have first learned about the Judgment.

26. Nevertheless, Chad Knight failed to disclose the recipient of these funds as he was required to do under Rule 69.

27. Upon information and belief, Chad Knight transferred these funds to an undisclosed account controlled by him and/or his wife.

28. On or about September 10, 2020, the Plaintiff filed a proposed writ of garnishment in the Boulder Case directed at the Law Firm to deliver all assets it owed to Chad Knight to Plaintiff. The writ of garnishment was subsequently issued by the Court Clerk on or about September 21, 2020.

29. Upon information and belief, the same day Plaintiff submitted its writ of garnishment to the Court Clerk, Defendant Chad Knight had his Law Firm issue a check to himself in the amount of $106,161.80.

30. Notably, the Law Firm historically would issue distribution checks to Chad Knight on the 13th or 15th of each month, not the 10th.

31. It therefore cannot be a coincidence that on the same day that the Plaintiff filed a proposed writ of garnishment directed at the Law Firm, Chad Knight, as a named partner, had his Law Firm write him a six-figure check so that he could have access to those funds before they were levied upon through service of the writ on the Law Firm.

32. On September 22, 2020, Plaintiff served the Law Firm with the writ of garnishment.

33. Upon information and belief, after Chad Knight claims to have learned of the Judgment and Plaintiff's collection efforts, Chad Knight as a managing member of his Law Firm, directed his Law Firm to stop making the monthly partner distribution checks to him personally.

34. Chad Knight directed his Law Firm to instead make all future monthly distributions payable to his wholly-owned entity, Defendant CMK.

35. Having instructed his Law Firm to no longer pay him personally for the profit distributions to which he was personally entitled, Chad Knight acting on behalf of the Law Firm then signed an answer to Plaintiff's writ of garnishment under penalty of perjury on October 5, 2020 stating that the Law Firm held no funds of Chad Knight nor owed Chad Knight any money, which was false.

36. Then, on October 15, 2020, the Law Firm issued a check in the amount of $106,161.50 to Defendant CMK for the profit distributions to which Chad Knight was personally entitled.

37. For the following months, the Law Firm issued profit distribution checks for Chad Knight's to Defendant CMK in a similar manner and amount.

38. At all times relevant, Chad Knight was the member of the Law Firm, and not Defendant CMK. Thus Chad Knight, not Defendant CMK was entitled to the monthly profit distributions from October 2020 to the present.

39. Upon information and belief, Defendant Chad Knight has indicated he had a pre-existing plan to assign his profit interests to Defendant CMK and has produced a Resolution purportedly signed by the members of his Law Firm from January 1, 2020.

40. However, no profits were diverted by the Law Firm to Defendant CMK until after Defendant Chad Knight claims to be aware of Plaintiff's collection efforts in the State of Colorado.

41. In fact, the profit diversion did not occur until October 2020, after Plaintiff's writ of garnishment was served on the Law Firm, thereby demonstrating an actual intent to delay and prevent Plaintiff from collecting against Defendant Chad Knight.

42. Given the timing of Plaintiff's efforts to enforce its Judgment and the Law Firm's re-direction of Chad Knight's profit distribution from him personally to Defendant CMK, it is clear the Defendant Chad Knight acted with the actual intent to hinder, delay and/or defraud Plaintiff in collecting on its claim against him.

43. Upon information and belief, Defendant Chad Knight is engaged in a scheme to transfer his personal assets to his wife in attempt to avoid Plaintiff's collection efforts.

44. In June of 2020, after Chad Knight had learned about Plaintiff domesticating the Judgment in Colorado and after he had already transferred $652,815.87 out of his E-Trade Account to an undisclosed recipient, he added his wife, Defendant Sara Knight as a joint owner of his E-Trade Account.

45. Given the timing, adding Sara Knight as a joint owner of the E-Trade Account was a transfer of ownership in his E-Trade Account effected for the purpose of hindering and delaying the Plaintiff in collecting on its claim against him.

46. Sara Knight testified that she never had access to the E-Trade account and that it was solely Chad Knight who ever accessed the E-Trade account.

47. But even that proved insufficient for Chad Knight in his quest to make himself and his assets "judgment proof" from Plaintiff.

48. In September 2020, once Chad Knight saw that Plaintiff was moving forward with executing on its Judgment through writs of garnishment, he had his wife open a new bank account at Vectra Bank solely in her name.

49. Upon information and belief, on September 22, 2020 two checks in the total amount of $301,331.03 withdrew funds from the Knights' "joint" E-Trade Account and deposited into Sara Knight's solely owned new Vectra Bank account.[1]

50. That this occurred on September 22nd demonstrates the fraudulent intent of Chad Knight and Sara Knight.

51. Specifically, on September 21, 2020, Plaintiff served the Law Firm with a writ of garnishment to seize all funds that the Law Firm owed to Chad Knight.

52. Also on September 22nd, FirstBank answered a writ of garnishment that Plaintiff had served on it indicating that FirstBank was holding a total of $20,027.44 in accounts jointly owned by Chad and Sara Knight. Thus, as of September 22nd FirstBank would have frozen all funds in the Knights' joint account.

53. Accordingly, to evade enforcement of Plaintiff's Judgment against their assets, the Knights schemed to open a new bank account at Vectra Bank solely in the name of Sara Knight.

54. Sara Knight testified that prior to opening the Vectra Bank account, the Knights paid for their personal expenses through their joint FirstBank accounts.

55. Sara Knight testified that after opening the Vectra Bank account, the Knights paid for their living expenses through that account instead.

56. Sara Knight testified that this $301,331.03 of funds deposited into her new Vectra Bank account was solely Chad Knight's money.

---

[1] The statements for Chad Knight's Etrade account reflect that the checks totaling $301,331.03 posted to the account on September 22nd, which most likely means that Chad Knight actually wrote those checks on September 21st, immediately after the Law Firm was served with the writs of garnishment.

57. Sara Knight testified that all funds in the Vectra Bank account derive from Chad Knight's earnings and are used to pay his personal expenses, despite her being the sole account owner.

58. Sara Knight testified that the source of all funds in her Vectra Bank account are Chad Knights' distributions from his Law Firm.

59. Sara Knight testified that if Chad Knight asked her to withdraw funds from her Vectra Bank account for his sole benefit, she would do so.

60. After learning about the Judgment being domesticated in Colorado, Defendant Chad Knight filed a Motion to Vacate the Judgment in Boulder County District Court claiming he did not receive adequate notice of the trial that resulted in the Judgment entering against him. On January 22, 2021, the Boulder County District Court entered an Order finding Chad Knight did not receive adequate notice of the trial, and thus, refused to enforce the Judgment in the State of Colorado.

61. Notwithstanding the Judgment having been vacated, Plaintiff still maintains a claim as a creditor against Defendant Chad Knight for failing to pay under his Loan guaranty.

62. Plaintiff is in the process of obtaining another judgment against Defendant Chad Knight in the State of Mississippi.

**FIRST CLAIM FOR RELIEF**
**(Actual Intent Fraudulent Transfer Against CMK Holdings, PLLC and Chad Knight;**
**C.R.S. § 38-8-105(1)(a))**

63. Plaintiff incorporates the allegations set forth above into this First Claim for Relief.

64. Plaintiff has a claim against Chad Knight in the amount of at least $2,021,899.12.

65. Plaintiff's claim against Chad Knight was evidenced by the Judgment.

66. On January 22, 2021, the Judge in the Boulder Case determined that Chad Knight did not receive adequate notice that a trial and judgment would be entered against him in Mississippi.

67. Accordingly, the Judgment as domesticated in Colorado was vacated.

68. The Mississippi Chancery Court of Harrison County has not vacated the judgment that it entered against Chad Knight and in favor of the Plaintiff in the amount of $2,021,899.12.

69. Even if the Mississippi judgment against Chad Knight is vacated by the Mississippi Court based on the ruling of the Colorado court, Plaintiff still has a valid and liquidated claim against Chad Knight by virtue of his guaranty of the Loan, and the Mississippi court would simply reschedule the trial on the Plaintiff's claim after providing Chad Knight with all the required notice that he asserted that he did not receive.

70. Chad Knight is a managing member of the Law Firm.

71. Acting for his own benefit and in the capacity of being managing member of the Law Firm, Chad Knight acted with actual intent to hinder, delay and defraud the Plaintiff in collecting on its claim by instructing his Law Firm to re-direct his profit distributions to Defendant CMK.

72. The conduct of Chad Knight and his Law Firm described above has all the hallmarks of an actual intent fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act ("CUFTA").

73. Chad Knight is an insider of the Law Firm.

74. Upon information and belief, Chad Knight, as a litigator, was monitoring the Boulder Case and when he saw that Plaintiff had filed a proposed writ of garnishment to the Law Firm, he had his Law Firm immediately issue a $106,161.80 check to himself on September 10th, even

though the Law Firm would historically not issue monthly distribution checks until the 15th of the month.

75. For his October 2020 distribution he had his Law Firm, under his control, begin a new practice of issuing distribution checks not to him, but to Defendant CMK so as to frustrate, conceal and hinder Plaintiff in execution of its Judgment.

76. By structuring its monthly distributions owed to Chad Knight to Defendant CMK instead, as alleged above, the Law Firm, under the control of Chad Knight, has and is acting in concert with Chad Knight for the express intent of hindering, delaying and defrauding Plaintiff in collection of its claim as contemplated by C.R.S. § 38-8-105(1)(a).

77. The Law Firm's October 5, 2020 and November 2, 2020 answers to the various writs of garnishment that Plaintiff served on the Law Firm, signed by Chad Knight as the authorized agent of the Law Firm, stating that it held no assets of Chad Knight or owed him no money was false and made in furtherance of hindering, delaying and defrauding the Plaintiff.

78. The conduct alleged above has had the intended effect of removing assets from the reach of Plaintiff with respect to its claim against Chad Knight.

79. In addition, Defendant CMK has similarly and knowingly participated in, and been the recipient of, the aforementioned transfers with the same fraudulent intent as Chad Knight.

80. As such, Plaintiff is entitled to a judgment against Defendant CMK in the amount of 150% of the funds that were wrongfully disbursed and are continuing to be wrongfully disbursed to Defendant CMK.  C.R.S. § 38-8-108(1)(c).

81. Upon information and belief, Defendant CMK is both a transferor and transferee under CUFTA.  Specifically, Defendant CMK is a transferee because Chad Knight testified that he

directed his Law Firm to pay earnings owed to Chad Knight, individually, to Defendant CMK. Since October 2020, Defendant CMK has been the transferee of earnings payable from the Law Firm to Chad Knight, individually.

82. In addition, Defendant CMK is also transferor under CUFTA because after the Law Firm pays the earnings of Chad Knight to Defendant CMK, upon information and belief, Defendant CMK then transfers those funds to Chad Knight. As a result, Defendant CMK is assisting Defendant Chad Knight in connection with the fraudulent transfers at issue in this case.

83. In addition, as a result of Chad Knight's demonstrated intentional fraudulent transfer conduct, Plaintiff seeks the appointment of a receiver over Defendant CMK to have full control of all amounts due and owing from Defendant CMK to Chad Knight. C.R.S. § 38-8-108(1)(d)(II).

84. Upon information and belief, each of the assets transferred as referenced in the Complaint could have been used to satisfy the claim of Plaintiff against Chad Knight.

85. Plaintiff further seeks all available remedies it has under CUFTA against Defendant CMK as the transferees of a fraudulent transfer.

86. Plaintiff's alleged damages exceed $75,000.

## SECOND CLAIM FOR RELIEF
### (Conspiracy to Commit Actual Intent Fraudulent Transfer Against CMK Holdings, PLLC and Chad Knight)

87. Plaintiff incorporates the allegations set forth above into this Second Claim for Relief.

88. Upon information and belief, Chad Knight and Defendant CMK, all came to a meeting of the minds to hinder, delay and defraud Plaintiff by removing assets from the reach of Plaintiff's claim against Chad Knight.

89. Chad Knight and Defendant CMK all took an overt act in furtherance of the fraudulent transfer activity as alleged above.

90. The result of the conspiracy between Chad Knight and Defendant CMK to engage in transfers to hinder, delay and defraud Plaintiff has resulted in damages caused to Plaintiff in an amount to be proven at trial but which equate to at least the value of the funds that have been intentionally diverted from the Law Firm to Defendant CMK, in an amount exceeding $75,000.

### THIRD CLAIM FOR RELIEF
### (Actual Intent Fraudulent Transfer Against Chad Knight and Sara Knight; C.R.S. § 38-8-105(1)(a))

91. Plaintiff incorporates the allegations set forth above into this Third Claim for Relief.

92. Plaintiff has a claim against Chad Knight in the amount of at least $2,021,899.12.

93. Upon information and belief, Sara Knight was aware of Plaintiff's Judgment and claim at the time she opened her Vectra Bank account.

94. Upon information and belief, Sara Knight opened her Vectra Bank account and accepted the funds from Chad Knight's E-Trade Account with the actual intent and/or knowledge that Chad Knight was transferring said funds to her for the purpose of hindering, delaying and defrauding Plaintiff in collecting on its claim against Chad Knight.

95. The funds that Chad Knight transferred to Sara Knight remain Chad Knight's funds.

96. Sara Knight is the wife of Chad Knight.

97. Upon information and belief, Chad Knight retains control, ownership and dominion over the funds that he transferred to Sara Knight and which are now in her Vectra Bank account.

98. Upon information and belief, Chad Knight continues to remit his earning and income from the Law Firm to Sara Knight's bank account.

99. Upon information and belief, Sara Knight knowingly and intentionally participates in this scheme for the purpose of hindering, delaying and defrauding Plaintiff in collecting on its claim.

100. Chad Knight and Sara Knight have therefore participated in "actual intent" fraudulent transfer activity under CUFTA. C.R.S. § 38-8-105(1)(a).

101. As such, Plaintiff seeks a judgment against Sara Knight and Chad Knight in the amount of 150% of the funds that Chad Knight has transferred to her for the purpose of hindering, delaying and defrauding Plaintiff. C.R.S. § 38-8-108(1)(c).

102. Upon information and belief, each of the assets transferred as referenced in the Complaint could have been used to satisfy the claim of Plaintiff against Chad Knight.

103. Plaintiff further seeks all available remedies it has under CUFTA against Sara Knight as a transferee of a fraudulent transfer.

104. Plaintiff's alleged damages exceed $75,000.

**FOURTH CLAIM FOR RELIEF**
**(Conspiracy to Commit Actual Intent Fraudulent Transfer Against Chad Knight and Sara Knight)**

105. Plaintiff incorporates the allegations set forth above into this Fourth Claim for Relief.

106. Upon information and belief, Chad Knight and Sara Knight both came to a meeting of the minds to hinder, delay and defraud Plaintiff by removing and diverting Chad Knight's funds in his E-Trade Account into Sara Knight's Vectra Bank account and maintaining this new financial "structure" to maintain Chad Knight's funds in an account that is not in his name but over which he has dominion and control.

107. Chad Knight and Sara Knight both took an overt act in furtherance of the fraudulent transfer activity as alleged above.

108.     The result of the conspiracy between Chad Knight and Sara Knight to engage in transfers and account structuring to hinder, delay and defraud Plaintiff has resulted in damages caused to Plaintiff in an amount to be proven at trial but which equate to at least the value of the funds that Sara Knight received and continues to receive from Chad Knight and/or Defendant CMK into her Vectra Bank account.

**FIFTH CLAIM FOR RELIEF**
**(Aiding and Abetting to Commit Fraudulent Transfer Against Sara Knight)**

109.     Plaintiff incorporates the allegations set forth above into this Fifth Claim for Relief.

110.     Upon information and belief, Defendant Sara Knight aided and abetted Defendant Chad Knight's fraudulent transfers as fully set forth in this Complaint by, among other things, knowingly participating in the fraudulent transfer conduct and by rendering substantial assistance to Defendant Chad Knight in connection therewith.

111.     Defendant Sara Knight rendered substantial assistance to Defendant Chad Knight's fraudulent transfer scheme by, among other things, agreeing to become a joint account holder of the E-Trade Account after Defendant Chad Knight allegedly learned of the Judgment and by agreeing to open the Vectra Bank account and to funnel Defendant Chad Knight's earnings from the Law Firm through ultimately the Vectra Bank account.

112.     By opening the Vectra Bank account solely in her name, Defendant Sara Knight is aiding and abetting Defendant Chad Knight's fraudulent transfers and intent to defraud the Plaintiff.

113.     By depositing Chad Knight's funds into the Vectra Bank account, Sara Knight is aiding and abetting Chad Knight's fraudulent transfer conduct.

114. By paying all of Defendant Chad Knight's personal expenses, including his mortgage and other expenses, with the Vectra Bank account, Defendant Sara Knight has further aided and abetted Defendant Chad Knight's fraudulent transfer conduct.

115. Plaintiff has been damaged by Defendant Sara Knight's aiding and abetting Defendant Chad Knight's fraudulent transfers in a specific amount to be proven at trial, but in an amount that exceeds $75,000.00.

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against the Defendants, and each of them as set forth below and that the Court afford Plaintiff such other relief as set forth below:

1. For a monetary judgment against Chad Knight and Defendant CMK in an amount to be proven at trial but which equates to the amount of funds that the Law Firm should have otherwise disbursed to Chad Knight as earnings and profit distribution, but instead transferred to Defendant CMK.

2. For a monetary judgment against Chad Knight and Sara Knight for the amount of money deposited into Sara Knight's Vectra Bank account.

3. Against all Defendants in the amount of the 150% penalty allowed by C.R.S. § 38-38-108(1)(c).

4. For a finding that Defendant CMK Holdings PLLC has conspired to facilitate Defendant Chad Knight's fraudulent transfer conduct.

5. For a finding that Defendant Sara Knight has conspired and aided and abetted Defendant Chad Knight's fraudulent transfer conduct.

6. For appointment of a receiver over Defendant CMK to take control of and account for all the assets wrongfully transferred as permitted by C.R.S. § 38-8-108.

7. Issuance of writs of execution and levy against the assets fraudulently transferred.

8. Issuance of an appropriate injunctive order.

9. Such other relief as the Court deems appropriate and allowed under C.R.S. § 38-8-108.

10. An award of attorneys' fees and costs if permitted by statute, rule or agreement.

Respectfully submitted this 26th day of February, 2021.

**HATCH RAY OLSEN CONANT LLC**

By: *s/Brian T. Ray*
Brian T. Ray, #34914
Christopher J. Conant, #40269
730 17th St., Suite 200
Denver, CO 80202
Phone: 303-298-1800
Emails: bray@hatchlawyers.com;
cconant@hatchlawyers.com
*Attorneys for Plaintiff*

Plaintiff's Address:
Hancock Whitney Plaza
2510 14th Street
Gulfport, MS 39501